UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

**RONALD AKERS**                                      CIVIL ACTION NO. 09-915

**VERSUS**                                            JUDGE DOHERTY

**SHAW ENVIRONMENTAL,**                               MAGISTRATE JUDGE HANNA
**INC., ET AL**

CONSOLIDATED WITH

**DAVID MCGRATH**                                     CIVIL ACTION NO. 09-1110

**VERSUS**                                            JUDGE DOHERTY

**SHAW ENVIRONMENTAL,**                               MAGISTRATE JUDGE HANNA
**INC., ET AL**

*REPORT AND RECOMMENDATION*

Before the court in these consolidated cases is defendants Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction.[1]  The motion is opposed.

*Background and Argument*

Plaintiffs filed suit alleging defendants breached an employment contract with them, and their complaints are identical for purposes of this motion.  Plaintiffs allege defendants arbitrarily breached "a maritime contract which called upon the Plaintiff[s] to perform certain commercial diving services in navigable water surrounding the island of

---

[1]Rec. Doc. 12.

1

Guam."[2] Specifically, plaintiffs alleged the dive team was to "salvage a pier and construct a new pier in its place in the navigable water off the island of Guam."[3]

Defendants filed the instant motion to dismiss, arguing plaintiffs had not alleged maritime contracts, arguing "[a] maritime contract is one which has 'direct and proximate juridical link' with the operation of a vessel in navigation," citing J.A.R. Inc. v. M/V Lady Lucille, 963 F.2d 96, 98 (5th Cir. 1992).

Immediately after the motion to dismiss was filed, plaintiffs filed supplemental and amended complaints, adding the following language to their allegations:

> Particularly, and upon information and belief, said services were to be conducted from a floating barge in connection with the removal and replacement of a pier and/or wharfage to be utilized by and for the benefit of US Navy vessels and other vessels engaged in maritime commerce in the navigable waters off the coast of Guam.[4]

In opposition to the motion to dismiss, plaintiffs argue a contract for diving services is a maritime contract, and defendants' argument that the diving services must be performed aboard or for the direct benefit of a vessel in navigation was flawed, as defendants rely upon jurisprudence where plaintiffs sought Jones Act status.

In this case, plaintiffs argue, they do not seek Jones Act status and the vessel connection inquiries are irrelevant. Moreover, plaintiffs argue, building a pier has been

---

[2] Rec. Doc. 1 in Civil Actions 09-915 and 09-1110.

[3] Rec. Doc. 1.

[4] Rec. Docs. 15, 17.

held a maritime activity as it aids maritime commerce and is used to support navigation.[5]

Plaintiffs explain they filed their supplemental and amended their petitions in "an abundance of caution" to allege a direct connection with a ship, and conclude that "not only were the services to be conducted from a floating barge, or vessel, but the pier was being built for the direct benefit of a vessel, or fleet of vessels, under the control of the U.S. Navy and/or in direct relation to maritime commerce and activities."[6]

Defendants responded to plaintiffs' opposition, attaching an unsworn affidavit of a Shaw employee that no diving activities were to take place from barges.

The court heard oral argument on the motion and noted the jurisdictional inquiry had changed from a facial to factual attack. Therefore, the court ordered limited discovery be had on issues relating to the jurisdictional inquiry. After discovery, the parties filed supplemental briefing.

In their supplemental briefing, plaintiffs argue the facts gleaned from discovery include the following:

1) The Guam Pier Project's stated purpose was to aid vessels in navigation;

2) the "initial version" of the project which involved Plaintiffs never made it off of the drawing board so SHAW cannot credibly argue that vessels were not going to be utilized in diving operations;

3) the project as ultimately completed (by sub-contractors at a later date, after

---

[5] *Plaintiffs' Joint Opposition to Defendants' Motion to Dismiss,* (Rec. Doc. 18), pp. 4, 5, 7.

[6] *Plaintiffs' Joint Opposition to Defendants' Motion to Dismiss,* (Rec. Doc. 18), p. 7.

> Plaintiffs were terminated) involved the extensive use of divers working in conjunction with vessels to accomplish the mission of the vessel in navigation;
>
> 4) the contracts for hire were not for the limited purpose of the project in Guam. In fact, the contracts were for indefinite employment and SHAW even contemplated future projects on which the Plaintiffs would work as divers; and
>
> 5) Plaintiffs were terminated as a result of the hazardous nature of the work inherent to underwater operations, i.e. the "perils of the sea", thus further highlighting the maritime nature of the work.[7]

In their supplemental memorandum in support of the motion to dismiss,[8] defendants argue the deposition testimony showed the diving services ultimately performed were not performed from a barge, but from the pier, and did not directly benefit any vessel in navigation, but were for the benefit of the owner of the pier. Moreover, the divers were never on a tug boat used in the project, but were on the pier when the tugboat was used. Finally, defendants argue, whether future diving projects may have been anticipated is irrelevant unless there is evidence to show plaintiffs would have been a "crewmember of a vessel in navigation or engaged in providing services for the direct benefit of such a vessel."[9]

Defendants reemphasize that "contrary to plaintiffs' contention, contracts for

---

[7]*Plaintiffs' Joint Supplemental Opposition to Defendants' Motion to Dismiss* (Rec. Doc. 39), p. 2.

[8]*Defendants' Supplemental Memorandum in Support of Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction* (Rec. Doc. 12).

[9]*Ibid.*, p. 14.

performing diving services, period, do not automatically give rise to a maritime contract,"[10] and that "[a]n employment contract for commercial diving services may be considered a maritime contract when the diver is either a crewmember of a vessel in navigation or engaged in providing his services for the direct benefit of such a vessel."[11]

Defendants conclude plaintiffs, lacking the requisite vessel connection, have not introduced any evidence the alleged contracts at issue were maritime contracts and therefore the court does not have subject matter jurisdiction.

## *Discussion*

*Motion to Dismiss Standard under Fed. R. Civ. P. 12(b)(1)*

A party may file a motion to dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and the court must dismiss the matter for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." See Home Builders Ass'n of Mississippi, Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir.1998).  The burden of establishing subject matter jurisdiction is on the party seeking to invoke it. Ramming v. United States, 281 F.3d 158,

---

[10]*Ibid..*

[11]*Defendants' Supplemental Memorandum in Support of Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction* (Rec. Doc. 12), p. 11, referencing Wallace v. Oceaneering Intern., 727 F.2d 427, 436 (5th Cir. 1984)(a commercial diver is engaged in maritime employment "when a substantial part of his duties are performed on vessels [in navigation]"); Hamilton v. County of Los Angeles, 131 Cal.App. 3d 982, 182 Cal. Rptr. 868 (contract of employment with a diver was a maritime contract since he was properly considered a part of the vessel's crew, and therefore had a direct and substantial connection with a vessel in navigation).

161 (5th Cir .2001). A Rule 12(b)(1) motion may be decided upon (1) the complaint alone (a facial attack); (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts (a factual attack). Id. A motion to dismiss under Rule 12(b)(1) should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. See Home Builders Ass'n of Mississippi, Inc., 143 F.3d at 1010.

*Maritime Contracts and Admiralty Jurisdiction*

The Fifth Circuit in J.A.R., Inc. v. M/V Lady Lucille discussed the test for admiralty jurisdiction and maritime contracts, as follows:

> To invoke admiralty jurisdiction in a contract dispute, the underlying contract must be a maritime contract. A maritime contract is "[a] contract relating to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea or *to maritime employment*[.]" Thurmond v. Delta Well Surveyors, 836 F.2d 952, 954 (5th Cir.1988), quoting 1 E. Jhirad, A. Sann, B. Chase & M. Chynsky, Benedict on Admiralty, § 183, at 11-6 (7th ed. 1985); see Theriot v. Bay Drilling Corp., 783 F.2d 527, 538 (5th Cir.1986) (holding that nature and character of contract determines whether it may be characterized "maritime"). Not every contract that touches incidentally on maritime activities is a maritime contract; for maritime character to attach, " 'there must be a direct and proximate juridical [sic] link between the contract and the operation of a ship....' " Theriot, 783 F.2d at 538, quoting Jhirad, supra. "[A]dmiralty will not entertain suits where the substantive rights of the parties flow from a contract to sell or construct a vessel." Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht, 625 F.2d 44, 47 (5th Cir.1980).

J.A.R, Inc. v. M/V Lady Lucille, 963 F.2d 96, 98 (5th Cir. 1992)(Footnotes omitted)(Emphasis added).

6

*Discussion*

The parties and court agree this court has subject matter jurisdiction only if it has admiralty jurisdiction, and the court has admiralty jurisdiction only if the alleged employment contracts are maritime contracts. Therefore, the sole issue before the court is whether the alleged contracts for employment as commercial divers are maritime contracts.

Defendants have latched on to language in the Theriot decision that there must be a "direct and proximate juridical [sic] link between the contract and the operation of a ship" in support of their argument that defendants have not alleged a maritime contract. In doing so, defendants have ignored the plain language of Benedict on Admiralty, cited by the Fifth Circuit in J.A.R., which declares a maritime contract is, in addition to "[a] contract relating to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea," "*[a] contract relating to . . .maritime employment[.]*" J.A.R., 963 F.2d at 98, quoting 1 E. Jhirad, A. Sann, B. Chase & M. Chynsky, Benedict on Admiralty, § 183, at 11-6 (7th ed. 1985)(Emphasis added).[12]

Defendants' interpretation of its cited authorities adds an additional requirement to a contract for maritime employment – the employment must be performed aboard or for the direct benefit of a vessel in navigation. The undersigned can find no support in the

---

[12] The undersigned notes In Theriot, 783 F.2d at 538, the contract at issue was not an employment contract. Instead, the court was attempting to resolve an indemnity issue by determining whether a contract between Bay Drilling and Houston Oil for drilling a well was maritime.

jurisprudence for such an interpretation, and defendants appear to have conflated the test for Jones Act seaman status with maritime employment.[13]

In the jurisprudence reviewed by the undersigned, even in those cases cited by defendants, commercial diving has been traditionally considered and understood to be without much discussion maritime employment.

Defendants cite to many cases where commercial divers were denied Jones Act seaman status in support of their "vessel" argument. A close review of those cases reveals the courts were not evaluating whether a commercial diver was engaged in maritime employment, but were trying to determine whether the commercial diver was a seaman and covered under the Jones Act, or some other type of maritime employee and covered under the LHWCA, as these acts are exclusive of one another. See Bertrand v. International Mooring & Marine, Inc., 700 F.2d 240 (5th Cir. 1983)(Our analysis of the issue of seaman's status necessarily begins by articulating the standards that resolve which marine workers are "seamen" or "members of a crew," since coverage under the Jones Act and the Longshoremen's and Harbor Workers' Compensation Act are mutually

---

[13] "[A]n employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission.' "... Second, and most important for our purposes here, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." Roberts v. Cardinal Services, Inc., 266 F.3d 368, 376 (5th Cir. 2001), citing Chandris, Inc. v. Latsis, 515 U.S. 347, 368, 117 S.Ct. 2172 (1995)(internal citations omitted).

exclusive. E.g., McDermott, Inc. v. Boudreaux, 679 F.2d 452, 459 n. 7 (5th Cir.1982); Ardoin v. J. Ray McDermott & Co., 641 F.2d 277, 280 (5th Cir.1981). The assumption, at the bottom of these cases, is that a commercial diver is engaged in a maritime activity and maritime employment whether he is ultimately deemed a Jones Act seaman or not.

Thus, while on initial review the undersigned believed whether a vessel was involved in the anticipated project was material, on further consideration the undersigned finds no authority or logic in imposing "a direct and proximate juridicial [sic] link between the contract and the operation of a ship" upon commercial diving before it is considered maritime employment. The jurisprudence reviewed is summarized as follows:

In Wallace v. Oceaneering Intern., 727 F.2d 427 (5th Cir. 1984), the issue was whether an offshore oil field commercial diver was a Jones Act seaman or not; that is, whether he was "permanently assigned to or performed a substantial part of his work on the vessel and the capacity of his employment must contribute to the function of the vessel, its mission, its operation, or its welfare." Wallace , 727 F.2d at 432, citing Beard v. Shell Oil Co., 606 F.2d 515, 517 (5th cir. 1979). In evaluating the divers' Jones Act status, the Wallace court specifically expounded on the "maritime nature" of a diver's work, stating as follows:

> A diver's work necessarily involves exposure to numerous marine perils, and is *inherently maritime* because it cannot be done on land. It is not, like so many offshore oil field occupations, an art developed in land work and transposed to a marine setting. See, e.g., Guidry v. Continental Oil Co., 640 F.2d 523 (5th Cir.1981). Oil field divers who regularly spend days or weeks at a time working, eating, and sleeping on vessels are exposed to the same

> hazards as other seamen. *Moreover, when a diver descends from the surface, braving the darkness, temperature, lack of oxygen, and high pressures, he embarks on a marine voyage* **in which his body is now the vessel**. *Before he can complete his assigned task, he must successfully navigate the seas.*
>
> We hold that *a commercial diver, who embodies the traditional and inevitably maritime task of navigation*, has the legal protections of a seaman when a substantial part of his duties are performed on vessels. It is the *inherently maritime nature of the tasks performed* and perils faced by his profession, and not the fortuity of his tenure on the vessel from which he makes the particular dive on which he was injured, that makes Wallace a seaman.

Wallace, 727 F.2d at 436. (Emphasis added).

While not binding on our court, of course, the Third Circuit, in a Jones Act case, has interpreted the Fifth Circuit's decision in Wallace as holding the profession of commercial diving is maritime in nature:

> There is also no question that Foulk met the first part of the second requirement-his connection to the vessel was substantial in nature. As the district court found, Foulk and the dive crew were necessary for the successful completion of the Farrell 256's project-the construction of the artificial reef. Foulk, 961 F.Supp. at 697. *Furthermore, the profession of commercial diving is maritime in nature as it cannot be done on land.* Wallace v. Oceaneering Int'l, 727 F.2d 427-36 (5th Cir.1984). Commercial divers are regularly exposed to the perils of the sea, the protection from which was the purpose of the Jones Act seaman requirement. Chandris, 515 U.S. at 368-70, 115 S.Ct. at 2190.

Foulk v. Donjon Marine Co., Inc., 144 F.3d 252, 258 (3rd Cir. 1998)(Emphasis added).

In Continental Casualty Co. v. Canadian Universal Ins. Co., 605 F.2d 1340, 1343 (5th Cir. 1979), the court deemed a diving contract a maritime contract, where a contract was executed between Continental Diving and Aquatic Contractors for diving services to

be performed off of Aquatic's barge. Interestingly, plaintiff was a diver's tender employed by Continental Diving, but sued Aquatic Contractors as a Jones Act seaman and member of the crew of Aquatic, even though he was employed by Continental. In any case, this case is concerned with subrogation and indemnification issues, and does not discuss maritime employment or maritime contracts except to state the diving contract between these two companies was a maritime contract.

In Smith v. Brown & Root Marine Operators, Inc., 243 F.Supp. 130 (D.C.La. 1965), the court found a diver a Jones Act seaman, even though he was not employed by the owner of the vessel. The discussion of his connection to the vessel is to address his Jones Act seaman status, and the court recognizes the nature of his employment as maritime:

> Although there is a paucity of authority on the status of marine divers as 'seamen', we have no hesitancy in holding that the plaintiff Smith was entitled to the seaman's traditional and statutory protections, regardless of the fact that he was employed immediately by someone other than the vessel owner (Seas Shipping Co. v. Sieracki, 328 U.S., 85, 66 S.Ct. 872; Pope and Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 143). Smith was a skilled sea diver employed by Underwater for the purpose of performing a highly specialized function. His work aboard and in furtherance of the vessel's mission was of a nature which required particular skills, knowledge and expertise possessed only by other persons of his calling. Neither he nor any other diver was subject to any supervision or control by Brown & Root in the details of their work. *It is equally clear that the nature of Smith's work was maritime.*

Smith, 243 F.Supp.at 132. (Emphasis added).

In Pickle v. International Oilfield Divers, Inc., 791 F.2d 1237 (5th Cir. 1986), the

11

Fifth Circuit reiterated the inherently maritime nature of commercial diving and diminished the importance of vessel connection in determining Jones Act seaman status for commercial divers:

> The trial court found that Pickle spent 90% of his work-time during his employment with IOD aboard an identifiable fleet of barges. In addition, as "a commercial diver, *who embodies the traditional and inevitably maritime task of navigation*, [Pickle had] the legal protections of a seaman when a substantial part of his duties are performed on vessels." Wallace v. Oceaneering Int'l, 727 F.2d 427, 436 (5th Cir.1984). This is so because "[i]t is the *inherently maritime nature of the tasks performed and perils faced by his profession*, and not the fortuity of his tenure on the vessel from which he makes a particular dive on which he was injured, that makes [Pickle] a seaman." Id. We perceive no erroneous fact-finding and no error of law in the trial court's determination that Pickle was a seaman.

Pickle, 791 F.2d at 1239. (Emphasis added).

This court has previously implicitly determined a commercial diver was engaged in maritime employment, although he was not found to be a Jones Act seaman. In Gates v. Delta Corrosion Offshore, Inc., 715 F. Supp. 160 (W.D.La.1989), the court determined Gates, who was a commercial diver engaged in work on subsea drilling platform rig legs, was not a Jones Act seaman, but was covered as a maritime worker under the LHWCA.

In McGray Const. Co. v. Director, Office of Workers Comp. Programs, 181 F.3d 1008 (9th Cir. 1999), cited by defendants in support of their argument that construction of a pier is not maritime, the court expressly stated plaintiff's past work as a "deep-sea diver" was maritime, although his current work as a pile driver was not:

> The Director also argues that the Board correctly deemed Mr. Hurston a "maritime employee," even if this job was entirely non-maritime, "by virtue

>of his overall employment history" and because "he is hired by companies out of a union hiring hall representing both trades." The theory is that because Caputo and our own decision in Schwabenland establish that the Act covers people where "at least some" of their time is spent on maritime work, *Mr. Hurston's history of spending 90% of his career in the maritime employment of deep-sea diving*, together with his being hired out of a hall that served maritime workers and employers of maritime workers, makes him a maritime employee even when hired for a non-maritime job.

McGray, 181 F.3d at 1013. (Emphasis added).

In Rizzi v. Underwater Const. Corp., 84 F.3d 199 (6th Cir. 1996), the court analyzed whether a commercial diver, injured while cleaning an underwater tank underneath a paper plant whose pipes flowed into the Great Miami River, qualified for Longshore and Harbor Workers Act benefits or state worker's compensation. The court defined the issue as whether Rizzi was injured in navigable waters covered by the Act and while in maritime employment as defined in the Act. Throughout the opinion, there is no question raised as to whether Rizzi was engaged in maritime employment. Instead, the entire analysis focused on the location of injury - whether it was in an area covered by the LHWCA and whether it fell under the Act – the unspoken assumption being Rizzi, a commercial diver, was engaged in maritime employment.

In an unpublished opinion in the Eastern District of Louisiana, a contract for divers and dive equipment was agreed to be a maritime contract:

>No party disputes that the contract, a contract in which Denbury retained divers and dive equipment to lay pipeline in a navigable waterway, is a maritime contract. See Continental Cas. Co. v. Canadian Universal Ins. Co., 605 F.2d 1340, 1342 (5th Cir.1979) (noting that a contract to perform diving services was a maritime contract).

13

Whittal v. Speciality Diving of Louisiana, Inc., 2008 WL 4691595, *2 (E.D.La.2008)(unpublished).

None of these cases stand for defendants' proposition that only those commercial diving contracts for employment upon a vessel or for the direct benefit of a vessel are maritime contracts.  The undersigned has not been pointed to or found a single case where a contract for employment as a commercial diver was held to be anything, directly or indirectly, but a maritime contract, whether the employee ultimately fell under the Jones Act, Longshore Harbor Workers Act, or state worker's compensation act.

Moreover, it would be illogical to require commercial divers to have a "vessel connection" in order to be classified as maritime employees.  The "connection to a vessel" requirement of the Jones Act was explained by the Supreme Court as follows:

> The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the seabased maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and *therefore whose employment does not regularly expose them to the perils of the sea.*

Chandris, Inc. v. Latsis, 515 U.S. 347, 368, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995)(Emphasis added).

It would be unnecessarily redundant to require a commercial diver to establish not only that he dives in the sea, but that he dives off of a vessel or for the benefit of a vessel, to establish simple maritime employment when by the very nature of his employment he is not only regularly exposed to but completely enveloped by the perils of the sea.

Under the undisputed facts of this matter, these plaintiffs were commercial divers

who allege they entered into employment contracts with defendants to repair, by diving underwater in their capacity as commercial divers, a pier used for docking and refueling very large U.S. Navy vessels in navigable waters off the coast of Guam.  Even if by defendants' interpretation of the jurisprudence a commercial diver must establish  "[a] contract relating to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea," ignoring "maritime employment" as a maritime contract, the undersigned finds such has been established.  These divers were to repair a pier used by U.S. Navy vessels for docking and refueling operations.  The vessels could not dock and refuel without the use of a properly maintained pier or dock, and plaintiffs' anticipated repair of same was directly related to ships, commerce, and navigation and was for the direct benefit thereof.

### *Conclusion and Recommendation*

For all the reasons given above, the undersigned finds the alleged contracts were for maritime employment and are maritime contracts over which this court has admiralty jurisdiction.  Therefore,

**IT IS RECOMMENDED** that defendants' Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction (Rec. Doc. 12) be **DENIED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may

respond to another party's objections within fourteen (14) days after being served with a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).**

Lafayette, Louisiana, this 6th day of August, 2010.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)